UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL SALAS,<br><br>   Plaintiff,<br><br>   v.<br><br>C. PFEIFFER, et al.,<br><br>   Defendants. | Case No. 1:21-cv-00669-NONE-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE DENIED<br><br>(ECF No. 29)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.   INTRODUCTION

Rafael Salas ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action. This case proceeds on Plaintiff's Fourteenth Amendment due process claim against defendants Thomas, Cortez, and Pfeiffer; Plaintiff's First Amendment Free Exercise Claim against defendants Thomas, Cortez, and Pfeiffer; and Plaintiff's Religious Land Use And Institutionalized Persons Act ("RLUIPA") claim against defendants Thomas, Cortez, and Pfeiffer in their official capacities. (ECF Nos. 1, 20, & 28).[1]  The core of Plaintiff's complaint is that Defendants are not properly processing his marriage request, which is preventing Plaintiff from getting married.

On September 16, 2021, Defendants filed a motion to dismiss. (ECF No. 29). On October 4, 2021, Plaintiff filed his opposition to the motion. (ECF No. 33). On October 12,

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

2021, Defendants filed their reply. (ECF No. 34).

For the reasons that follow, the Court will recommend that Defendants' motion to dismiss be denied.

## II. CLAIMS AT ISSUE

### a. Summary of Plaintiff's Complaint

Plaintiff alleges as follows in his complaint:

Plaintiff is a practicing Messianic Jew. Since 2010, Plaintiff has been studying and practicing Judaism as his personal religious belief.

On May 30, 2012, under the teachings and in the presence of Rabbi Hample, a Bar Mitzvah ceremony was held for Plaintiff because Plaintiff reached a religious maturity by learning and accepting Judaism as his belief. It is Plaintiff's responsibility to observe the tenets of Judaism, i.e., maintaining a Kosher diet, studying the Torah, observing the Sabbath, tithing, praying, attending service, reciting the Shema every morning and night, and fulfilling and keeping the holy commandments.

Plaintiff regards marriage as a holy act, rite, and sacrament of matrimony. Judaism believes in the concept of "bashert," which means soulmates. The purpose of marriage is to unite these two halves, whom they will love for the rest of their lives, to please God, who is a witness to all marriages. The Torah mandates "[a] man should…be united with his wife, and they shall become one…." (ECF No. 1, p. 11) (alterations in original) (citation omitted). Plaintiff sincerely believes that his fiancée is his bashert and that he is required to be united in holy matrimony and they shall become one.

In early 2020, Plaintiff filed his first grievance against Kern Valley State Prison employees for refusing to provide marriage forms. It took four months and a grievance in order for Plaintiff to receive his requested marriage forms.

After filling out the marriage forms, attaching the required birth certificates of Plaintiff and his fiancée, and sending the necessary funds to prison officials, neither Plaintiff nor his fiancée were contacted on the status of their marriage request.

After more than three months with no answer, in around July of 2020, Plaintiff filed

another grievance, in which he contended prison officials intentionally forestalled, and thus refused, to grant authorization to marry. This denied Plaintiff the ability to practice his belief, for marriage is a required commandment of his Jewish religion, which he must fulfill.

On August 14, 2020, defendant Godwin, the Chief Deputy Warden, approved Plaintiff's grievance and ordered defendant Thomas, a Correctional Counselor II, to review the marriage packet for completion by July 29, 2020.

However, defendant Thomas did not complete the review at the appointed deadline. Instead, defendant Thomas delegated his responsibilities to a lower ranking Correctional Counselor, defendant Cortez.

On August 18, 2020, defendant Cortez notified Plaintiff that the marriage packet is still being reviewed.

On August 26, 2020, Plaintiff spoke to his fiancée. She was told to inform Plaintiff that the marriage process is on hold until Plaintiff clarifies whether he was previously married, and that he should contact defendant Cortez.

On August 16 and 30 of 2020, Plaintiff notified defendant Cortez that he is legally single and that he mistakenly documented he was married to his ex-girlfriend (Marisela Flores), because they had planned on getting married but broke up.

On August 27 and September 21 of 2020, defendant Cortez said that Plaintiff's ex-girlfriend is listed as his wife on his C-File, and based on this information, denied the marriage request.

On September 2, 2020, Plaintiff "thrice" contacted defendant Thomas via a CDCR 22 Form, notifying him that defendant Cortez refused to consider Plaintiff's personal details about not actually being married. Plaintiff made defendant Thomas aware that defendant Cortez used inaccurate information to deny his marriage request. Plaintiff reminded defendant Thomas that his fiancée provided a background check that confirmed that Plaintiff is not married but listed as single. Defendant Thomas failed to provide a required response.

On September 7, 2020, Plaintiff contacted the Warden, defendant Pfeiffer, via a CDCR 22 Form. Plaintiff notified defendant Pfeiffer that Plaintiff was being denied authorization to

marry based on inaccurate information. Plaintiff explained that defendant Cortez failed to consider Plaintiff's claim that he is not married, and that she did not bother to verify the validity of Plaintiff's claim. Defendant Pfeiffer was made aware that a background check was provided that attested that Plaintiff is not married. Moreover, defendant Pfeiffer was reminded that his correctional counselors are required to notify prisoners of their legal requirements and help them obtain approval, and that California Department of Corrections and Rehabilitation ("CDCR") employees should assist in getting qualified help. Plaintiff put defendant Pfeiffer on notice that "it is SALAS's religious beliefs to have a wedding ceremony." Plaintiff asked defendant Pfeiffer to intercede.

Defendant Pfeiffer failed to provide the required response. Instead, on September 17, 2020, defendant Thomas responded to the request addressed to defendant Pfeiffer. Defendant Thomas claimed that he needs a verified document from the Court or Hall of Records that shows that Plaintiff has never been married, and that an internet background check is not a legal document. Defendant Thomas advised Plaintiff to file a grievance.

Plaintiff is informed and believes that his fiancée spoke to Court and Hall of Records officials, who informed her that no such record would exist that simply states that Plaintiff has never been married. Plaintiff is aware that defendant Thomas was aware of this detail yet continued providing dead-end advice.

On September 21, 2020, Plaintiff sent defendant Pfeiffer a Request for Supervisor Review, attached with a signed affidavit which declared that Plaintiff is not married. Plaintiff notified defendant Pfeifer that staff placed a substantial burden on his ability to exercise his fundamental rights by forcing him to retrieve a legal document that states he was never married, which does not exist. Plaintiff asked defendant Pfeiffer to intervene. Defendant Pfeiffer failed to provide the required response again.

On September 7, 2020, Plaintiff contacted defendant Cortez and placed her on notice that CDCR policy and procedure requires counselors to notify prisoners of the legal requirement and assist them in getting approval for the wedding ceremony. Also, CDCR employees must help prisoners obtain qualified assistance for their legal problems. Defendant

1  Cortez failed to provide the required response and assistance.

2      On September 18, 2020, Plaintiff filed another grievance, contending that CDCR
3  employees are denying him the freedom to marry and are violating his religious freedoms.

4      In early October of 2020, his grievance was denied on the mistaken finding that CDCR
5  employees did not violate CDCR policy.

6      On October 11, 2020, Plaintiff sent the grievance to the Third Level for final review.

7      On October 8, 2020, Plaintiff sent a letter to the Secretary of the CDCR, defendant
8  Allison, notifying her that Kern Valley State Prison staff relied on inaccurate information to
9  deny Plaintiff's marriage request and failed to resolve the issue, which violated Plaintiff's right
10 to marry and his right to exercise his beliefs. Defendant Allison failed to provide a response.

11     On October 26, 2020, Hall of Records official Albert Menaster sent Plaintiff a letter,
12 which was prompted by Plaintiff's request for documentation showing he was never married.
13 Mr. Menaster said he was unable to locate Plaintiff in the system. Thus, Plaintiff was unable to
14 obtain documentation that defendants Cortez and Thomas required him to retrieve in order to
15 be able to get married.

16     On November 10, 2020, Plaintiff spoke to defendant Cortez regarding the marriage
17 request. Defendant Cortez refused to provide assistance, claiming she had done her job.
18 Additionally, defendant Cortez said she would not accept any further information from any
19 outside source and that she only considers information that is found in a prisoner's C-File.
20 Plaintiff reminded defendant Cortez that, as part of her job, she is required to assist Plaintiff
21 until he receives approval for his wedding ceremony, and if legal problem(s) should arise,
22 defendant Cortez is required to provide Plaintiff with someone who is qualified to assist him.
23 Defendant Cortez "conceded," and said that she would contact the litigation coordinator so that
24 the matter could be resolved and Plaintiff could get approval to get married.

25     Plaintiff thanked defendant Cortez for her cooperation. However, as Plaintiff was
26 headed outside, defendant Cortez began yelling out, "NO NO NO!" Plaintiff walked back to
27 her office and asked if she was talking to him. Defendant Cortez replied, "No No No, she's
28 white, just file a 602 grievance…." Plaintiff reminded defendant Cortez that he filed numerous

grievances which got him nowhere. Defendant Cortez responded, "I don't care, just file a 602."

On January 11, 2021, the Los Angeles Superior Court sent Plaintiff a legal document stating that the Clerk of the Court made a thorough search for public records from January 1, 2000, to January 11, 2021, for the name of Rafael Salas, and that the search disclosed no records. This response was prompted by a letter that Plaintiff sent to the Clerk of the Superior Court in which he requested documentation showing that he was never married.

In March of 2021, Plaintiff submitted a CDCR 22 Form to defendant Cortez, notifying her that he had obtained the sought-after legal documentation from the Hall of Records and the Court, which states there is no record. Plaintiff requested an interview so that he could provide said documents. Plaintiff also asked defendant Cortez to verify and accept the documentation, and thus grant Plaintiff approval for a wedding ceremony. Defendant Cortez ignored Plaintiff's request and failed to take necessary action.

As a follow-up, Plaintiff contacted defendant Thomas via a CDCR 22 Form, and made him aware that designated staff failed to respond to the matter. As such, Plaintiff asked defendant Thomas for an interview so that Plaintiff could provide the documents to defendant Thomas. Plaintiff also asked defendant Thomas to verify and accept the documentation, and thus grant Plaintiff approval for a wedding ceremony. Defendant Thomas ignored Plaintiff's request and failed to provide any remedy.

Plaintiff is informed and believes that defendant Godwin, defendant Pfeiffer, and defendant Allison are responsible for the lawful operation of Kern Valley State Prison.

As Chief Deputy Warden, defendant Godwin is responsible for reviewing prisoners' grievances which concern policy, procedures, personnel, events, or decisions that affect prisoners.

"Warden PFEIFFER is responsible for the supervision of supervising personnel, the development, training, applying standards, policy, and procedures that govern the opreationsof [sic] KVSP, and is responsible of all prisoners under his charge."

"CDCR Secretary ALLISON is responsible for promulgating, supervising the

6

promulgation of, implementing supervising the promulgation of, monitoring compliance with, supervising the monitoring of compliance with, enforcing and/or supervising enforcement of all policies and procedures affecting all prisoners in CDCR."

"Having been made aware of the illegal and unconstitutional treatment, actions, customs, and practices that affected Plaintiff, subsequently, Defendants GODWIN, PFEIFFER, and ALLISON have authorized, condoned, approved or knowingly acquisced [sic] in the violations of the rights alleged in the complaint."

Plaintiff brings a claim for a violation of his Fourteenth Amendment right to marry, violation of his First Amendment right to exercise his religion, and violation of the Religious Land Use and Institutionalized Persons Act of 2000.

b. <u>Screening Order</u>

The Court screened Plaintiff's complaint and found "that the following claims should proceed past screening: Plaintiff's Fourteenth Amendment due process claim against defendants Thomas, Cortez, and Pfeiffer; Plaintiff's First Amendment Free Exercise Claim against defendants Thomas, Cortez, and Pfeiffer; and Plaintiff's RLUIPA claim against defendants Thomas, Cortez, and Pfeiffer in their official capacities." (ECF No. 15, pgs. 16-17). The Court also found that all other claims should be dismissed. (<u>Id.</u> at 17).

The Court directed Plaintiff to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Fourteenth Amendment due process claim against defendants Thomas, Cortez, and Pfeiffer; his First Amendment Free Exercise Claim against defendants Thomas, Cortez, and Pfeiffer; and his RLUIPA claim against defendants Thomas, Cortez, and Pfeiffer in their official capacities; or c. Notify the Court in writing that he wants to stand on his complaint." (<u>Id.</u> at 18). Plaintiff decided to proceed only on the claims the Court found cognizable. (ECF No. 16). All other claims and defendants have been dismissed. (ECF No. 28).

\\\
\\\

### III. MOTION TO DISMISS

a. Defendants' Motion

On September 16, 2021, Defendants filed a motion to dismiss. (ECF No. 29).

Defendants first argue that the Court should abstain from hearing this case because the "fundamental question posed by this case is whether Salas is currently married," which is an issue of domestic relations that should be handled by a state superior court. (ECF No. 29, p. 9).

Second, Defendants argue that Flores must be joined as a party because Plaintiff is asking for a court order that would state that Flores never legally married Plaintiff, an order that would potentially have a significant impact on Flores's life. (Id. at 10). "Accordingly, the Court should order Salas to join Flores as a party or order Salas to provide Defendants with her current contact information so that Defendants may join her through an interpleader claim. If Flores cannot be joined as a party, the Court should issue an order to show cause why the case should not be dismissed under Fed. R. Civ. Proc. 19(b)." (Id. at 11).

Third, Defendants argue that Plaintiff should be equitably stopped from claiming that he is not married. (Id.). "All the elements [of equitable estoppel] are met here. (1) Salas knows whether he is married. (2) Salas intended to mislead prison officials about his marital status when he told them he was married. Salas's allegation that he 'had planned on getting married but broke up,' indicates that Salas was well aware that he never actually married Flores. (3) When Salas told CDCR officials that he was married, those officials had no ready way of confirming whether Salas was actually single. Indeed, even now it is unclear which of Salas's versions of events is actually true. And (4) when responding to Salas's marriage request, Defendants relied on Salas's central file, which is based on Salas's representation that he was married. That reliance was to their detriment, as Salas now demands compensatory and punitive damages from Defendants." (Id.). Defendants also argue that Plaintiff benefited from his deception, citing to benefits the California Department of Corrections and Rehabilitation provides to married inmates and their spouses. (Id. at 12). "For these reasons, the equities weigh heavily in favor of estopping Salas from pursuing his claims any further." (Id.).

Fourth, Defendants argue that Plaintiff has unclean hands because he lied about being

married. (Id.). "Salas comes to this Court with unclean hands because—assuming the truth of his allegations—he admits lying to prison staff about the very issue at the core of this lawsuit: his marital status. Equity demands that Salas not be permitted to lie about being married and then demand damages from Defendants for relying on Salas's lies." (Id.).

Finally, Defendants argue that the individual capacity claims should be dismissed pursuant to the doctrine of qualified immunity. (Id. at 13). "Defendants searched for authority on the precise question at issue in this case, namely, may prison officials forbid a marriage when the prisoner-plaintiff has provided conflicting information about his marital status? Defendants did not find any authority on point, much less any precedential authority." (Id. at 15).

      b. Plaintiff's Opposition

Plaintiff filed his opposition on October 4, 2021. (ECF No. 33). Plaintiff dedicates most of his opposition to arguing that his complaint states cognizable claims.

Plaintiff also argues that Defendants are not entitled to qualified immunity. (Id. at 9-10). Plaintiff argues that Defendants' argument regarding whether the rights at issue were clearly established "is based on their version of the facts — which omits Defendant CORTEZ'S offensive and indignant remarks and conduct, defendant THOMAS tasking Plaintiff to retrieve documents which he needs in order to grant marriage request, then refusing to consider the documentation, and Defendant PFEIFFER failure to act when made aware of his employees' misconduct which violated his freedom to marry and his religious freedoms — the argument being that plaintiff lied about being married which suggest that Defendants know plaintiff is not married, yet, turning around and raising a contradicting defense that they did not want to facilitate a bigamous marriage. Therefore, any argument that Defendants' action were justified is untenable." (Id. at 10) (errors in original).

## IV. LEGAL STANDARDS FOR MOTIONS TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts

in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Iqbal, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

## V.   ANALYSIS

As to Defendants' first and second arguments, that this case presents a domestic relations dispute better heard by a state superior court and that Flores must be joined as a party, the Court disagrees. Plaintiff alleges that "he is legally single and that he mistakenly documented he was married to his ex-girlfriend, MARISELA FLORES, because they had planned on getting married but broke up." (ECF No. 1, p. 5).[2] Thus, according to Plaintiff, he and Flores were never married. He also alleges that he has sufficient documentary evidence to establish this fact. Yet Defendants have ignored this evidence.

Nothing in Plaintiff's complaint requires this Court to enter a domestic order, such as on marriage or a divorce. Moreover, there is no indication that Flores will contest Plaintiff's

---

[2] The Court notes that, in his opposition, Plaintiff states that his fiancée "changed her last name to SALAS after Plaintiff and her became Registered Domestic Partners when the Secretary of State certified both persons met all requirements under Cal. Fam. Code Section 297, one of which are, 'Neither person is married to someone else…'. (Certified Aug. 10, 2021)." (ECF No. 33, p. 8 n.1) (errors and alteration in original).

version of events. Thus, this case does not involve a domestic relations dispute and this case will not impact Flores in a way that would require her to be joined as a party.[3]

As to Defendants' third, fourth, and fifth arguments, these arguments fail because they are based on the assumption that this case is proceeding based on the allegation that Defendants relied on Plaintiff's statement that he was married to Flores in denying his marriage request.[4] In arguing that the doctrine of equitable estoppel applies, Defendants state that "when responding to Salas's marriage request, Defendants relied on Salas's central file, which is based on Salas's representation that he was married. That reliance was to their detriment, as Salas now demands compensatory and punitive damages from Defendants." (ECF No. 29, p. 11). In arguing that Plaintiff has unclean hands, Defendants argue that "[e]quity demands that Salas not be permitted to lie about being married and then demand damages from Defendants for relying on Salas's lies." (Id. at 12). In arguing that they are entitled to qualified immunity, Defendants argue that the issue in this case is: "may prison officials forbid a marriage when the prisoner-plaintiff has provided conflicting information about his marital status?" (Id. at 15).

However, based on Plaintiff's allegations, the main issue in this case is not whether Defendants relied on Plaintiff's statement that he was married to Flores to deny his marriage request. Instead, Plaintiff's claims concern the alleged actions of Defendants after Plaintiff's marriage request was denied. For example, in allowing Plaintiff's Fourteenth Amendment due process claim to proceed against defendant Thomas, the Court noted that, according to Plaintiff, in response to Plaintiff telling defendant Thomas that he was not actually married, defendant Thomas told Plaintiff to produce a record showing that Plaintiff is not married, a record that does not exist. (ECF No. 15, p. 11).[5] As to defendant Cortez, in allowing the claim to proceed,

---

[3] As to Defendants' request for the Court to order Plaintiff to provide Flores's contact information, Defendants may request this information from Plaintiff once discovery begins.

[4] The Court notes that Defendants do not ask that any particular claim or any particular defendant be dismissed. Instead, Defendants address all claims together. As this is how Defendants present their arguments, this is how the Court will address them.

[5] The Court notes that, at least for purposes of their motion to dismiss, Defendants appear to concede that such a record would not exist. (See ECF No. 34, p. 4) ("Although Salas allegedly attempted to prove that he was single by providing Defendants with a 'background check' and a statement from the Los Angeles County Clerk of Court there was no ready, definitive way for Defendants to determine that Salas was not married. Even if Salas

the Court noted that she also "told Plaintiff to provide a record that does not exist. Moreover, Plaintiff alleged that defendant Cortez eventually told Plaintiff that she would assist Plaintiff in getting the matter resolved and his marriage request approved. However, she then found out that Plaintiff's fiancée is white and then refused to help." (Id.). Liberally construing Plaintiff's complaint and construing all facts in the light most favorable to Plaintiff, Plaintiff alleged not only that Defendants denied his marriage application, but also refused to reconsider that issue in light of legal documentation.

In their motion, Defendants do not address Defendants' actions as alleged by Plaintiff.[6] Their motion to dismiss should be denied on that basis.

Moreover, Defendants have not cited to any case in which a court dismissed constitutional claims brought pursuant to section 1983, damage requests based on constitutional claims, or claims brought pursuant to the RLUIPA at the motion to dismiss stage based on the defenses of unclean hands or equitable estoppel. And, the Court is not aware of any such precedential authority. Moreover, given Plaintiff's factual allegations, consideration of these defenses is not appropriate at this stage in the proceeding. See Kincaid v. City of Fresno, 2007 WL 833058, at *5 (E.D. Cal. Mar. 19, 2007) ("[I]t would be inequitable for Plaintiffs' unauthorized presence on Caltrans property to result in the divestiture of their right to pursue a claim for alleged Constitutional violations. A determination on the merits of Plaintiffs allegations serves an important policy interest. To dismiss the claims against Defendant

---

had never married in Los Angeles County, it was possible that he had married in another county, State, or even a foreign country.") (citation omitted).

[6] To the extent Defendants' reply raises new arguments, the Court need not address those arguments. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

However, the Court does note that, for the first time in their reply, Defendants argue that "even if Cortez had offered to contact a litigation coordinator on Salas's behalf but then told him to file a prison grievance instead after learning that Salas's fiancée is white, that would not have been illegal. The written grievance system is how the Department of Corrections and Rehabilitation addresses inmate grievances, and it was not illegal for prison staff to direct Salas to use that system to resolve his grievance about his marriage request." (ECF No. 34, p. 7) (citations omitted). The Court disagrees. According to Plaintiff, Plaintiff reminded defendant Cortez that, as part of her job, she is required to assist Plaintiff until he receives approval for his wedding ceremony, and if legal problem(s) should arise, defendant Cortez is required to provide Plaintiff with someone who is qualified to assist him. Defendant Cortez agreed to this request, and said that she would contact the litigation coordinator so that the matter could be resolved. However, after finding out that Plaintiff's fiancée is white, she refused to fulfill her job responsibilities and help Plaintiff with his issue. The Court disagrees that such a scenario would be a proper use of the grievance system.

1  Kempton at this stage based on the maxim of unclean hands would frustrate the purpose of §
2  1983.  The unclean hands defense, if applicable, is inherently factual and cannot be decided on
3  a pleading motion.").  To the extent Defendants suggest that someone has no right to be
4  married if he or she incorrectly stated in the past that he or she was already married, Defendants
5  cited no authority for this claim and the Court is aware of none.

6        The Court also notes that "[q]ualified immunity is an affirmative defense to damage
7  liability; it does not bar actions for declaratory or injunctive relief."  The Presbyterian Church
8  (U.S.A.) v. United States, 870 F.2d 518, 527 (9th Cir. 1989).  Plaintiff requests injunctive relief
9  and declaratory relief (ECF No. 1, p. 3), which are not subject to the defense of qualified
10 immunity in any event.

11       Finally, the Court notes that, in their reply, Defendants state that they "are not
12 contesting that Salas has a right to marry Heather Salas, assuming that he can demonstrate he is
13 legally eligible to do so (*i.e.*, single)."  (ECF No. 34, p. 4) (footnote omitted).  Plaintiff has
14 alleged in his complaint that he is legally single and that he presented evidence of this to
15 Defendants, but they refused to consider this information.  Thus, taking Plaintiff's factual
16 allegations as true for purposes of this motion and viewing them in the light most favorable to
17 Plaintiff, Plaintiff has stated a constitutional claim.  Accordingly, Defendants' motion to
18 dismiss should be denied.

19 **VI.    RECOMMENDATIONS**

20       Based on the foregoing, IT IS RECOMMENDED that Defendants' motion to dismiss
21  (ECF No. 29) be DENIED.

22       These findings and recommendations are submitted to the United States district judge
23 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-
24 one (21) days after being served with these findings and recommendations, any party may file
25 written objections with the court.  Such a document should be captioned "Objections to
26 Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be
27 served and filed within fourteen (14) days after service of the objections.  The parties are
28 advised that failure to file objections within the specified time may result in the waiver of

rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

| Dated: | **November 29, 2021** | /s/ *Erin P. Gros[...]* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |